**Maria F. RAMIREZ, Plaintiff,**

v.

**IBP, INC., Defendant.**

**No. 94–4101–SAC.**

United States District Court,
D. Kansas.

Nov. 6, 1995.

**1424**

David O. Alegria, McCullough, Wareheim & La Bunker, P.A., Topeka, KS, for plaintiff.

Jack L. Whitacre, Spencer, Fane, Britt & Browne, Kansas City, MO, Brian F. Stayton, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, J. Nick Badgerow, Spencer, Fane, Britt & Browne, Overland Park, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This retaliatory discharge case comes before the court on the defendant's motion for summary judgment. (Dk. 34). The plaintiff, Maria F. Ramirez ("Ramirez"), worked for the defendant IBP, Inc. ("IBP") for approximately twenty months. During her employment, Ms. Ramirez sustained work-related injuries to her legs, arms and back. On June 17, 1992, IBP fired Ms. Ramirez telling her that it was due to excessive absenteeism. At the time of her termination, Ms. Ramirez informed IBP's agents that her work-related injuries had caused the attendance problems. According to Ms. Ramirez, she was fired in retaliation for her work-related injuries and her exercise of rights under the Kansas Workers' Compensation Act. According to IBP, Ms. Ramirez was fired for having twelve instances of absences during a twelve-month period.

## SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record

that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas Drilling Partnership v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## STATEMENT OF UNCONTROVERTED FACTS

For purposes only of this motion for summary judgment, the court finds the following facts, as so stated, to be uncontroverted:

1. On November 5, 1990, Ms. Ramirez began working for IBP at its plant in Emporia, Kansas. IBP terminated her on June 17, 1992.

2. IBP's written employment policy provides: "Employees who establish a record of twelve (12) or more instances of absenteeism a year will be considered excessively absent from work. This will include all excused absences from work except those absences which are excused in advance by the supervisor." The policy defines an "instance" of absence as "[o]ne or more consecutive days of absence for the same reason."

3. The absenteeism policy also specifies the nature and timing of the warnings given: four instances—verbal warning, six instances—white slip, and nine instances—written letter. On the twelfth instance, the policy provides the employee's termination.

4. According to its rules, regulations and practices, IBP does not count as an instance any absence resulting from a work-related injury. Absences caused by illnesses or other injuries are counted as instances.

5. IBP also has a policy requiring an employee to notify management of an absence at least thirty minutes prior to the employee's starting time. If an employee fails to notify the management of the absence, it is treated as an unexcused absence. IBP's policy authorizes an employee's termination for three unexcused absences.

6. Supervisors at IBP maintain written reports on which they record calls from employees for excused absences. The supervisors forward these reports to the personnel department where they are kept for twelve months.

7. Ms. Ramirez testified that she called to give notice of her absences. If she called before her supervisors had arrived at work, her call was forwarded to the personnel department and someone there would take her message.

8. The personnel department uses the supervisors' reports to track an employee's absences on individual "absentee calendars" that are kept in each employee's personnel file. When an employee calls in sick, the

personnel department records on the employee's absentee calendar both the absence and a code that describes the nature or cause of the absence. IBP uses codes that differentiate between illnesses and injuries that are work related and those that are not.

9. IBP reported to the Workers' Compensation Director's Office three accidents at work involving Ms. Ramirez. The first accident was that Ms. Ramirez in May of 1991 had developed a tingling pain in both shoulders during the regular performance of her job. The report shows Ms. Ramirez was placed on light duty work. The second accident was reported to have occurred on August 29, 1991, when Ms. Ramirez fell down some stairs while going to her work area. The injury described was pain in "left spine and hip." The third accident was reported to have occurred on May 9, 1992, when Ms. Ramirez developed bilateral pain in both shoulders radiating to her fingers from the repeated performance of her work tasks. This report shows Ms. Ramirez was given light duty work.

10. Ms. Ramirez testified that her second reported accident occurred on or about August 20, 1991.

11. The 1991 and 1992 absentee calendars for Ms. Ramirez display the following instances of absences and the codes describing each of the absences:

| | | |
|---|---|---|
| 1. | August 12–14, 1991 | Non–Work–Illness |
| 2. | August 24 and 26, 1991 | Non–Work–Illness |
| 3. | August 28–29, 1991 | Non–Work–Illness |
| 4. | September 25, 1991 | Non–Work–Illness |
| 5. | November 18, 1991 | Non–Work–Illness |
| 6. | January 3, 1992 | Non–Work–Illness |
| 7. | February 11, 1992 | Non–Work–Illness |
| 8. | March 25–26, 1992 | Non–Work–Illness |
| 9. | March 30–April 27, 1992 | Leave of Absence |
| 10. | May 28–June 10, 1992 | Leave of Absence |
| 11. | June 12–13, 15, 1992 | Non–Work–Illness |
| 12. | June 17, 1992 | Non–Work–Illness |

12. The plaintiff admitted in her deposition that the first and second instances were for illnesses unrelated to a work injury.

13. On the third instance of August 28–29, 1991, the plaintiff first testified that the most likely explanation was a "Non–Work–Illness." Later during her deposition, reflected by five transcript pages, the plaintiff

corrected herself and said the third instance was due to back and leg pain she experienced as a result of the accident in August of 1991. Ms. Ramirez testified that when she notified IBP of this absence she also told management the reason for her absence was back and leg pain. When asked to identify with whom she had spoken, she answered that she was "pretty sure" it was Lisa Aranda in the personnel department.

14. A nurse at IBP had issued a job activity order on August 27, 1991, to the plaintiff's supervisor that restricted Ms. Ramirez to "sit down work only."

15. On the fourth instance of September 25, 1991, Ms. Ramirez testified that she believes this absence also was due to leg and back pain: "I can't really be sure that this is what happened the 25th of September or what, but it's just that after the accident the pain was so extreme that most of my absences were caused by this extreme pain in my back and my legs following the accident." (Ms. Ramirez Dep. at 149). Ms. Ramirez believes she told Lisa Aranda the reason for this absence.[1]

16. Ms. Ramirez remembered that the fifth instance on November 18, 1991, was due to pain in her shoulders for which she had received physical therapy from IBP's dispensary. Ms. Ramirez did not tell her supervisor the cause of her absence until the next day of work.

17. Ms. Ramirez remembered that the sixth instance on January 3, 1992, was due to back pain caused by her recent assignment to a cleaning job. Ms. Ramirez believed she told either her supervisor, the nurse or Lisa Aranda the reason for this absence.

18. After the sixth instance, IBP gave Ms. Ramirez a written warning.

19. Ms. Ramirez could not remember the seventh instance of February 11, 1992, or the reason for it.

20. Ms. Ramirez admitted that the eighth instance of March 25–26, 1992, was for a "Non–Work–Illness," specifically severe ab-

---

1. In its reply, IBP cites to page 150 of the plaintiff's deposition to controvert the second paragraph of the plaintiff's statement of facts. Be-

cause this page of the deposition is not included in the summary judgment exhibits, the court cannot rely on the defendant's argument.

dominal pain. Ms. Ramirez returned to work on March 27, 1992, and made a written application for medical leave of absence for gall bladder surgery. The application was dated March 31, 1991, and requested the leave to begin on March 31, 1991.

21. Ms. Ramirez admitted that ninth instance of March 30, 1992, through April 27, 1992, was for the pre-arranged gall bladder surgery.[2]

22. Following the surgery, Ms. Ramirez was given a release to return to work on April 27, 1992, without any restrictions. During her treatment for the gall bladder condition, Ms. Ramirez did not mention her back or leg pain.

23. Ms. Ramirez admitted the tenth instance of May 28, 1992, through June 10, 1992, was for a "Non–Work–Illness," specifically pregnancy, urinary tract infection, chills, fever, headache, nausea and vomiting. Ms. Ramirez made a written application on May 29, 1992, for a medical leave of absence. The leave was approved on June 1 and 2, 1992, and ran from May 29, 1992, through June 10, 1992.

24. Ms. Ramirez returned to work on June 11, 1992, but was absent for an illness unrelated to her work from June 12, 1992, through June 15, 1992. Ms. Ramirez saw her family doctor who diagnosed her with laryngitis and tonsillitis. During her visit, Ms. Ramirez did not complain to her family doctor about leg or back pain. She testified that she took over-the-counter pain killers for the pain and that her family doctor was not to whom she would go for leg and back pain.

25. The twelfth instance occurred on June 17, 1992. The plaintiff testified that on June 17, 1992, she showed up for work and went directly to a IBP nurse. Ms. Ramirez told the nurse that her leg and back was hurting. The nurse sent Ms. Ramirez to the personnel office, where she met with Rodger Brownrigg, Nancy Downs, and Danielle Wallace. Ms. Ramirez told them that her leg and back was hurting and that she wanted to see a doctor. According to Ms. Ramirez, Mr. Brownrigg told her that she "already had all these absences and if I went to the doctor and the doctor determined that I should take more time off, should have more absences, then he would fire me. But that if I didn't go to the doctor, I could keep my job." (Ms. Ramirez Dep. at 72–73). Ms. Ramirez told Mr. Brownrigg that her injuries at work had caused her attendance problems. Ms. Ramirez testified that she was instructed to go home.[3] Later on June 17, 1992, Ms. Ramirez arranged to visit a physician the next day for her leg and back pain.

26. The physician who examined Ms. Ramirez on June 18, 1992, told her she needed rest away from work. The physician gave her a written note for her employer that said she was not to return to work in order to rest her leg and back. After the examination, Ms. Ramirez called the personnel department and spoke to Lisa Aranda. Ms. Ramirez related her visit to a physician and his order against returning to work. Ms. Aranda reminded her of what Mr. Brownrigg had said the day before about taking more time off. Ms. Aranda instructed Ms. Ramirez to come in and complete the separation papers and turn in her equipment.

27. The physician's charts from the visit on June 18, 1992, indicate Ms. Ramirez complained of pain in her right hip and leg. Brownrigg and Ms. Wallace, who interpreted for Ms. Ramirez in her meeting with Mr. Brownrigg, remember that Ms. Ramirez indicated pain in her right leg during the meeting. Ms. Ramirez testified that she never

**2.** Rodger Brownrigg, IBP's Complex Personnel Manager, testified that a medical leave of absence would count as one instance. The plaintiff argues the leave of absence qualifies as a planned absence or as an absence excused in advance by her supervisor that does not count as an instance under IBP's policy. IBP's written definition of "absence" includes this sentence: "Days missed due to an authorized leave of absence will be counted as one (1) day and one (1) instance of absence."

**3.** Brownrigg's recollection of this meeting differs substantially from that of the plaintiff's. He recalls that on June 17, 1992, Ms. Ramirez simply phoned in her absence for what was recorded as a illness unrelated to work. On June 18, 1992, Brownrigg remembers having Ms. Ramirez report to his office where he spoke with her and then terminated her.

complained of pain in her right leg and that her physician must have incorrectly completed the chart.

28. Lisa Aranda assisted Ms. Ramirez with completing the separation papers. The exit interview form is dated June 22, 1992. Where the form asks if the employee knows the reason for the discharge, the blanks for "Yes" and "Absenteeism" are marked. Ms. Ramirez directed Ms. Aranda to write "for her leg" next to "Absenteeism."

29. Ms. Ramirez filed her claim for workers' compensation claim on June 27, 1992.

## DISCUSSION

 Kansas employment law is grounded on the doctrine of employment-at-will, that is, absent an express or implied contract "between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged." *Morriss v. Coleman Co.*, 241 Kan. 501, 510, 738 P.2d 841 (1987) (citing *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976)). This means an employer may discharge an employee-at-will "for good cause, for no cause, or even for wrong cause" without subjecting itself to legal liability. *Id.* 241 Kan. at 508, 738 P.2d 841. The only exceptions to this rule are based on public policy. *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 176, 872 P.2d 252 (1994). The first exception is that the employer may not discharge the employee in retaliation for filing a workers' compensation claim, *Murphy v. City of Topeka*, 6 Kan.App.2d 488, Syl. ¶ 7, 630 P.2d 186 (1981) or for being absent or not calling in an anticipated absence because of a work-related injury, *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, Syl. ¶ 3, 752 P.2d 645 (1988), or for intending to file a worker's compensation claim, *Chrisman v. Philips Industries, Inc.*, 242 Kan. 772, 775, 751 P.2d 140 (1988). The second exception is that the employer may not discharge " 'an employee

in retaliation for the good faith reporting [whistle-blowing] of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials.' " *Ortega v. IBP, Inc.*, 255 Kan. 513, 517, 874 P.2d 1188 (1994) (quoting *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685 (1988)).

 An employer rarely admits to a retaliatory intent; therefore, the employee must look to circumstantial evidence in proving the claim. *Marinhagen v. Boster, Inc.*, 17 Kan.App.2d 532, 540, 840 P.2d 534 (1992), *rev. denied*, 252 Kan. 1092 (1993). Because reasonable persons may differ on the inferences critical in determining a person's state of mind, summary judgment is more often the inappropriate way of resolving the issue of an employer's retaliatory intent. *See Koopman v. Water Dist. No. 1 of Johnson County*, 972 F.2d 1160, 1164 (10th Cir.1992). Nevertheless, when the employee fails to come forth with sufficient evidence to raise a genuine issue regarding the employer's intent or an essential element of her retaliatory discharge claim, the district court may properly grant an employer's motion for summary judgment. *See Koopman*, 972 F.2d at 1164.

 The burden rests with the employee to prove that the employer terminated him or her in retaliation for filing a claim under the Workers' Compensation Act. *See Ortega*, 255 Kan. at 528, 874 P.2d 1188. The employee can recover only upon proving that the discharge was "based on," "because" of, "motivated by" or "due to" the employer's intent to retaliate. *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 146–148, 815 P.2d 72 (1991). The employee need not prove that retaliation was the employer's sole motive or reason for the termination. *Brown*, 249 Kan. at 147, 815 P.2d 72. The employee must prove her claim "by a preponderance of evidence, but the evidence must be clear and convincing in nature."[4] *Ortega*, 255 Kan. at 528, 874 P.2d 1188.

---

4. "Clear and convincing" refers to the quality of proof, not the quantum. *Newell v. Krause*, 239 Kan. 550, 557, 722 P.2d 530 (1986). For the evidence to be clear and convincing,

the witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony

■ The federal district courts in Kansas have adapted the burden-shifting approach applied in discrimination cases for use in analyzing state-law retaliatory discharge claims. *Huffman v. Ace Elec. Co., Inc.*, 883 F.Supp. 1469, 1475 (D.Kan.1995); *Lawrence v. IBP, Inc.*, No. 94–2027–EEO, 1995 WL 261144, at *11, 1995 U.S.Dist. LEXIS 6118, at *29 n. 2 (D.Kan. Apr. 21, 1995); *see, e.g., Robertson v. IBP, Inc.*, No. 94–2047–GTV, 1995 WL 164034, 1995 U.S.Dist. LEXIS 4465 (D.Kan. Mar. 27, 1995); *Rosas v. IBP, Inc.*, 869 F.Supp. 912, 916 (D.Kan.1994); *cf. Ortega*, 255 Kan. at 526, 874 P.2d 1188 (After noting that the plaintiff must prove a causal nexus between the employee's protected activity and the employer's decision to terminate, the Kansas Supreme Court referred to the burden-shifting scheme from *McDonnell Douglas* as the approach it utilizes in discrimination and free speech employment cases). To establish a typical prima facie case of retaliatory discharge, the plaintiff must show (1) that she filed a claim for workers' compensation benefits or sustained a work-related injury for which she could assert a future claim for such benefits; (2) that the employer had knowledge of the plaintiff's compensation claim or the fact that she had sustained a work-related injury for which she could file a future claim for benefits; (3) that the employer terminated her employment; and (4) that a causal connection existed between the protected activity or injury, and the termination. *Huffman*, 883 F.Supp. at 1475; *Rosas*, 869 F.Supp. at 916; *Chaparro v. IBP, Inc.*, 873 F.Supp. 1465, 1472 (D.Kan.1995). Proof of a prima facie case raises " 'a rebuttable presumption' " of a retaliatory intent. *See Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir.1994) (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir.1988)); *Rosas*, 869 F.Supp. at 916.

■ Once the plaintiff employee establishes a prima facie case, it becomes the employer's burden to produce a legitimate,

nondiscriminatory reason for the discharge. *Huffman*, 883 F.Supp. at 1475. While its reason must be specific and clear, the employer need not litigate the merits of its reason, prove its reason was bona fide, or prove its reason was applied in a nondiscriminatory fashion. *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir.1992) (citations omitted). Once the employer produces such a reason, the presumption of retaliatory intent raised by the prima facie case " 'simply drops out of the picture.' " *Ingels*, 42 F.3d at 621 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)). The burden of persuasion now falls back to the employee to prove with clear and convincing evidence that the employer acted with a retaliatory intent. *Rosas*, 869 F.Supp. at 916.

■ To avoid summary judgment at this point in the analysis, the employee must assert specific facts establishing a triable issue as to whether the employer's reason for discharge is a mere cover-up or pretext for retaliatory discharge. *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994). "If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate." *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir.1993), *overruled in part on other grounds, Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir.1995). On the other hand, should the plaintiff come forth with a prima facie case and evidence that the defendant's reasons are pretextual, the case must go to the jury. *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995).

IBP argues it is entitled to summary judgment because the plaintiff does not have clear and convincing evidence to establish a causal connection between her discharge and her work-related injuries. IBP dismisses as "bald allegations" the plaintiff's testimony that certain absences were caused by work-

---

must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue.
*Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 78, 596 P.2d 816 (1979) (citations omitted). The evidence is clear

"if it is certain, unambiguous, and plain to the understanding. It is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it." *Ortega*, 255 Kan. at 528, 874 P.2d 1188 (*citing Chandler v. Central Oil Corp.*, 253 Kan. 50, 58, 853 P.2d 649 (1993)).

related injuries. IBP insists the plaintiff's deposition reveals that she does not distinctly recall the facts or narrate the details of the transaction exactly and in order. Her testimony, according to IBP, is not clear, direct and weighty in the face of IBP's absentee calendars showing the twelve instances of absences and IBP's officials' testimony about the same. Finally, IBP considers the plaintiff's testimony contradicted by written documentation from her physicians.

■■■■■ A federal court sitting in diversity strives to apply state law towards the goal of reaching a result that would be no different than the one which would have been reached in the state court. *Adams–Arapahoe School Dist. No. 28–J v. GAF Corp.*, 959 F.2d 868, 870 (10th Cir.1992). The plaintiff insists that her proof must be clear and convincing at the time of trial but that she need not meet this elevated quality of proof in order to defeat summary judgment. In *Baumann v. Excel Industries, Inc.*, 17 Kan. App.2d 807, 815, 845 P.2d 65, *rev. denied*, 252 Kan. 1091 (1993), the Kansas Court of Appeals held that "the application of a clear convincing evidence standard at the summary judgment stage is unique to libel cases because First Amendment rights are at issue." *See Gorham State Bank v. Sellens*, 244 Kan. 688, 691, 772 P.2d 793 (1989) (a party resisting summary judgment on its fraud claim need not come forth with clear and convincing evidence). While state law determines the substantive evidentiary standard of proof for a state law claim at trial, it is federal law that determines where a court looks for the standard governing summary judgment procedures. *Hill v. IBP, Inc.*, 881 F.Supp. 521, 524 (D.Kan.1995); *Robertson v. IBP, Inc.*, No. 94–2047–GTV, 1995 WL 405095, at *2, 1995 U.S.Dist. LEXIS 9525, at *6 (D.Kan. June 29, 1995); *Garcia v. IBP, Inc.*, No. 93–2338–EEO, 1994 WL 590905, at *6, 1994 U.S.Dist. LEXIS 15554, at *17 (D.Kan. Oct. 26, 1994). In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court said:

> [W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.
>
> . . . .
>
> Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. This conclusion is mandated by the nature of this determination. The question here is whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not. Whether a jury could reasonably find for either party, however, cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant: It makes no sense to say that a jury could reasonably find for either party without some benchmark as to what standards govern its deliberations and within what boundaries its ultimate decision must fall, and these standards and boundaries are in fact provided by the applicable evidentiary standards.

477 U.S. at 252, 254–55, 106 S.Ct. at 2512, 2513. Consequently, a plaintiff cannot defeat summary judgment in federal court on a diversity claim of retaliatory discharge without coming forth with sufficient evidence of a clear and convincing quality to sustain a jury verdict in the plaintiff's favor.

■■■■ Implicit in most of what the defendant argues is that the clear and convincing standard gives the court license to assess on summary judgment which side's version of an event is more credible. Though this standard may allow for a more critical evaluation of certain evidence, it does not entitle the court to exceed its limited authority on summary judgment. In such proceedings, courts often may reject as a bald allegation the plaintiff's unsupported testimony about the employer's intent or motive. The plaintiff's testimony here concerns matters on which she has personal knowledge and, therefore, cannot be dismissed as bald allegations.

The plaintiff testified that as to the third, fourth, fifth, sixth and twelfth instances each was due to work-related injuries and each time she told management the reason for her

absence. This testimony is not speculation about the intent or motive of another. The plaintiff is testifying to events she experienced, to reasons she had, and to things she said. Though the plaintiff seemed somewhat unsure which instances were caused by the work-related injury in August of 1991, she specifically remembered experiencing severe pain which forced her to be absent more than once. The fifth instance was due to shoulder pain for which she was treated by the dispensary. The sixth instance was due to back pain caused by a recent assignment to a cleaning job. Both of these latter instances seem reasonably associated with verifiable events. The twelfth instance appears supported by a physician's note that she should not return to work because of back and leg pain. Arguably, there is contemporary evidence that supports the likelihood that each instance was due to a work-related injury. As far as the issue of whether the plaintiff told the defendant the reasons for her absences, this appears to be a genuine credibility contest between the plaintiff and those whom she says she told. In short, this is not a case where the plaintiff's testimony can be dismissed as unsupported allegations.

The causal prong of the plaintiff's prima facie case and her rebuttal of the defendant's articulated business reason are evidenced first by the defendant counting absences caused by work-related injuries. In addition, there is close timing between her injuries and IBP's adverse actions that led to her discharge. Her deposition testimony that Brownrigg essentially discouraged her from seeing a doctor for her injury and warned her that she would be terminated if she was required to take any more time off for her injury is significant evidence. Finally, Brownrigg without any further investigation immediately fired the plaintiff even though she had just told him that one or more of her absences was due to work-related injuries. Genuine issues of material fact preclude the court from ruling that the plaintiff was fired for non-retaliatory reasons. Based on the Rule 56(c) evidence provided, the court concludes that the plaintiff has come forth with sufficient evidence of a clear and convincing quality on which a reasonable jury could find

that she was discharged in retaliation for her work-related injuries.

The defendant asks the court to limit the Kansas Supreme Court's decision in *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P.2d 645 ("*Coleman*"), to its facts and argues its application to this case would be an unwarranted extension of Kansas law. Absent some indication in *Coleman* or in its subsequent opinions that the Kansas Supreme Court would limit the opinion to its facts, this court is without a basis for doing so. The court, however, agrees that the opinion includes statements which arguably submit to a reading of questionable breadth:

> In this case, it was undisputed that Safeway could have terminated Coleman's employment under the applicable attendance policy if she had accrued six infractions. The district court correctly decided that any absences caused by her work-related injury should not be counted against Coleman. Allowing an employer to discharge an employee for being absent or failing to call in an anticipated absence as the result of a work-related injury would allow an employer to indirectly fire an employee for filing a workers' compensation claim, a practice contrary to the public policy of this state as decided in *Murphy v. City of Topeka*. Other jurisdictions have also recognized that it is a violation of public policy and workers' compensation law to discharge an employee for absences due to work-related injuries. *See, e.g., Lo Dolce v. Regional Transit Service, Inc.*, 77 App. Div.2d 697, 429 N.Y.S.2d 505 (1980).

242 Kan. at 815–16, 752 P.2d 645. The defendant argues against reading *Coleman* to hold that an employee fired for excessive absences can avoid summary judgment simply by testifying that one or more of the absences were caused by work-related injuries. According to the defendant, such a reading would impose "quasi-strict liability" on the employer which leaves no defense other than proving that none of the absences were due to work-related injuries. Moreover, this reading would "almost guarantee that summary judgment would never be appropriate in any case where an employee was

terminated because of excessive absences." (Dk. 35 at 22).

The plaintiff first argues that *Coleman* protects employees who are fired for being absent or for not calling in anticipated absences due to work-related injuries. The court presumes the plaintiff's first argument is that *Coleman* imposes liability without regard to whether the employer knew or should have known that the employee's absences or anticipated absences were caused by work-related injuries. Alternatively, the plaintiff insists "[t]he public policy behind *Coleman* mandates that an employer be liable for retaliatory discharge any time it fires an employee who has communicated to its employer that one or more of her absences were caused by work-related injuries." (Dk. 40 at 21). The court presumes the plaintiff to argue alternatively that IBP is liable for retaliatory discharge in this circumstance without any proof of an unlawful retaliatory motive. The plaintiff offers no support for her position other than the language found in *Coleman.*

From what is argued, the court understands the parties' differing interpretation of *Coleman* to revolve around two related issues—the employer's knowledge and the employer's intent. First, did the Kansas Supreme Court in *Coleman* intend that a plaintiff/employee fired for excessive absences or for failure to call in anticipated absences could recover for retaliatory discharge without having to prove that the defendant/employer knew or should have known at the time of discharge that one or more of the absences were due to work-related injuries? Second, did the Kansas Supreme Court in *Coleman* intend that a plaintiff/employee fired for one or both of the same reasons could recover for retaliatory discharge without having to prove a specific retaliatory intent on the employer's part? The court has spent considerable time researching these issues and perusing the *Coleman* opinion and, quite frankly, is not entirely certain what the Kansas Supreme Court intended with respect to these two issues or with respect to the causal nexus that must be established when an employee claims she was fired for absences or failure to call in anticipated absences caused by work-related injuries. The court's efforts have revealed some of the following observations.

The court in *Coleman* did not explicitly address either the employer's knowledge or intent. Most of the opinion is devoted to the issue whether an employee covered by a collective bargaining agreement could maintain action in tort for retaliatory discharge. It is during the discussion of this issue, however, that the Kansas Supreme Court explains how this tort came to be recognized and the public policy for which this tort was created:

Prior to the Court of Appeals decision in *Murphy,* other jurisdictions limited the employment-at-will rule so employers could not discipline or discharge employees for reasons violative of an established or statutorily declared public policy. Generally, cases involving discharge of employees in contravention of established state policy may be divided into three classes: (1) cases in which employees are discharged for refusing to violate criminal statutes; (2) cases in which employees are discharged for exercising a statutory right; and (3) cases in which employees are discharged for complying with a statutory duty. (citation omitted). Specific motives for discharge of employees which have been held actionable by some courts as violative of state public policy include retaliation for filing workers' compensation claims,.... (citation omitted).

. . . .

In *Murphy v. City of Topeka,* 6 Kan. App.2d 488 [630 P.2d 186], a Court of Appeals panel ... recognized a public policy exception to employment-at-will doctrine for employees discharged in retaliation for filing workers' compensation claims....

The court in *Murphy* took care to emphasize the tort nature of the employee's cause of action and stated that the claim arose "from a duty imposed by law based upon public policy preventing an employer from wrongfully discharging an employee in retaliation for filing a workmen's compensation claim. Plaintiff's action clearly

sounds in tort...." 6 Kan.App.2d at 493 [630 P.2d 186].

242 Kan. at 808–09, 752 P.2d 645. Before it even reached the issue whether summary judgment for the employer was appropriate, the Kansas Supreme Court in *Coleman* had said that a retaliatory discharge claim was a tort grounded on public policy and that to be actionable [5] the employer must have had the specific motive of retaliating against the employee for filing a workers' compensation claim. Logically, this background on the tort and the relevant public policy is the context in which one should construe the court's later holding and discussion.

The stated purpose of the court in *Coleman* was to extend the tort of retaliatory discharge so as to prevent an employer from doing indirectly what the employer was prohibited from doing directly. 242 Kan. at 816, 752 P.2d 645. One understanding of this statement is that the Kansas Supreme Court, concerned over an employer's possible exploitation of an employee's absences caused by a work-related injury, wanted to treat a discharge for such absences as a per se violation of public policy. Another way to read this same statement is that *Murphy* first prohibited the employer from discharging an employee *in retaliation for filing* a workers' compensation claim and *Coleman* now would prevent an employer from indirectly discharging an employee *in retaliation for filing* a claim by justifying the discharge on absences caused by work-related injuries. The first reading focuses on the effect of the employer's actions while the latter reading stresses that the circumstance which amounts to a violation of public policy is the employer's unlawful motive to retaliate or to coerce employees in the free exercise of their rights under the Workers' Compensation Act.

The court in *Coleman* cites *Lo Dolce* as an example when a court has found a violation of public policy simply because the employee was discharged for absences due to work-related injuries. The court in *Lo Dolce* had held that a discharge due to absences caused

by work-related injuries "explicitly violates section 120 of the Workers' Compensation Law." 429 N.Y.S.2d 505. Four years before the *Coleman* decision, the New York Court of Appeals overruled *Lo Dolce* to the extent it recognized a statutory violation absent proof of the employer's retaliatory intent:

> Lower courts have adopted a broad interpretation that condemns any action triggered by the employee's work-related injury regardless of whether it was a retaliatory tactic (*see, e.g., Matter of Griffin v. Eastman Kodak Co.,* 80 A.D.2d 689, 436 N.Y.S.2d 441, *mot. for lv. to app. dsmd,* 53 N.Y.2d 1028, 442 N.Y.S.2d 497, 425 N.E.2d 885; *Matter of Lo Dolce v. Regional Tr. Serv.,* 77 A.D.2d 697, 429 N.Y.S.2d 505, *mot. for lv. to app. den.,* 51 N.Y.2d 706, 433 N.Y.S.2d 1026, 413 N.E.2d 369). These decisions distort the meaning and purpose of section 120. The statute's critical language is its injunction to employers not "to *discharge or in any other manner discriminate* against an employee as to his employment *because* such employee has claimed or attempted to claim compensation ..., or *because* he has testified or is about to testify...." (emphasis added). Clearly, there must be a causal nexus between the employee's activities in obtaining compensation and the employer's conduct against the employee. Moreover, the very meaning of "discrimination" requires that there be a distinction among groups. Thus, an employment practice that is applied evenhandedly to all employees represents a neutral policy that does not constitute discrimination, particularly if it is based on legitimate business concerns (citation omitted).

*Duncan v. New York State Developmental Center,* 63 N.Y.2d 128, 481 N.Y.S.2d 22, 24–25, 470 N.E.2d 820, 822–23 (1984). That it cited *Lo Dolce,* without even mentioning *Duncan,* may suggest to some that the Kansas Supreme Court wanted to emphasize a retaliatory discharge could occur in Kansas when the employee was discharged for absences due to work-related injuries whether

---

**5.** "[S]uits of a tort nature for retaliatory discharge based on the theory that dismissal of employees for reasons violative of a particular

public policy are actionable." *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 135, 815 P.2d 72 (1991).

or not there was evidence of a retaliatory intent.

Besides the opinion itself, another place to look in understanding *Coleman* is subsequent opinions by the Kansas appellate courts. In *Pilcher v. Board of Wyandotte County Comm'rs*, 14 Kan.App.2d 206, 215, 787 P.2d 1204, *rev. denied*, 246 Kan. 768 (1990), the Kansas Court of Appeals held that the district court's instructions did not go far enough in disclosing that "[i]n Kansas it is not only wrongful to fire an employee because he or she has filed a workers' compensation claim, it is equally wrongful to terminate an employee because of his or her absence due to a work-related injury." The court explained its holding in these terms:

> The jury should have been instructed on the "rest of the story" that, even though no claim had been filed, an employee may not be terminated for absences due to a work-related injury which form the basis for a workers' compensation claim in the future. A termination on that basis would be a retaliatory discharge based upon the possibility of a workers' compensation claim being filed in the future for which retaliatory discharge Pilcher was entitled to damages.

14 Kan.App.2d at 215, 787 P.2d 1204. The Kansas Court of Appeals reads *Coleman* as saying that a discharge for absences caused by work-related injuries is necessarily the same thing as a retaliatory discharge for the possibility of a workers' compensation being filed in the future.

In 1991, the Kansas Supreme Court issued an unpublished opinion in a case where the plaintiff appealed a jury verdict for the employer on a claim for retaliatory discharge. *Mitchell v. Thorman & Wright Motel Corp.*, 807 P.2d 161, 1991 Kan. LEXIS 32 (1991).[6] The plaintiff argued the district court erred in not using a verdict form that allowed the jury to directly address the plaintiff's claim for absences caused by work-related injuries.

The defendants argued that the plaintiff's interrogatory would have allowed the jury to impose liability without finding the element of retaliatory intent. The court said that the plaintiff's interrogatory "would have related directly to the conclusion in *Pilcher*," but that the district court's instructions as a whole "properly stated the law and adequately covered the question." 807 P.2d 161 1991 Kan. LEXIS 32 at *17–*20. The Supreme Court quoted the relevant instruction given:

> The two principal policies of the workers' compensation laws for which the legal cause of retaliatory discharge is designed to support and protect are the assurance of treatment for a job related injury and rehabilitation and return of the worker to the same or similar employment, if medically reasonable, without fear of retaliation because of the workers' compensation status.

> If it is established an employee suffered a work related injury and thereafter left and remained off the job as a result, an employee's failure or inability to comply with an employer's absentee or call-in work rules does not constitute lawful excuse for the employee's termination if, in fact, the employer knew or could reasonably discover or verify by good faith effort subsequent the employee's reason for absence was, to the reasonable mind, probably the result of the work related injury. Further, it is not illegal to terminate an employee who has suffered an injury when it reasonably appears the employee will be unable in the reasonable future to perform the same job and no other jobs are available with the employer for which the employee is qualified, able, or eligible to perform. Nor is the employer required to hold a job open during any medically necessary rehabilitation period if the employer must reasonably act to fill the position permanently in order to fulfill the employer's business purpose and prevent loss or expense.

---

**6.** This court is well aware that the Kansas Supreme Court considers its unpublished opinions "to be without value as precedent" and prohibits those opinions from being "cited as precedent by any court or in any brief or other material presented to any court, except to support a claim of res judicata, collateral estoppel or law of the case." 1994 Kan.Ct.R.Annot. 7.04. Nevertheless, this court believes resort to an unpublished opinion may be appropriate in the narrow circumstance where, like in this case, the court is looking for any indication of what the Kansas Supreme Court intended in *Coleman*.

*Id.* at \*17–\*18, 807 P.2d 161. Keeping in mind that this opinion is devoid of precedential force, it is still some indication that courts believe there is a knowledge element to a *Coleman* kind of claim for retaliatory discharge.

Most recently, the Kansas Supreme Court construed *Coleman* as holding that "even where the employee had not yet filed a workers compensation claim, an employer is prohibited from firing an employee who is absent from work due to a work-related injury and who might file a workers compensation claim." *Ortega,* 255 Kan. at 516, 874 P.2d 1188. This statement does not suggest any required proof of a causal nexus between the employer's decision to terminate and the employee's possible exercise of rights under the Workers' Compensation Act. The court later in the *Ortega* opinion compared whistle-blowing and workers' compensation retaliatory discharge actions in these terms:

Both are tort actions for the same type of conduct of the employer: firing an employee in retaliation for something the employee has done.

. . . . .

The tort of wrongful discharge in retaliation for filing a workers compensation claim is based on the same public policy as the whistle-blowing retaliatory discharge tort. . . . Both exceptions to the employment-at-will doctrine developed to control the actions of employers which violate public policy. An employer violates public policy when it fires an employee for whistle-blowing and or for filing a workers compensation claim. . . . The basis of both workers compensation retaliation cases and whistle-blowing retaliation cases is the employer's bad motive in discharging the employee.

255 Kan. at 521, 874 P.2d 1188. The Kansas Supreme Court makes unmistakably clear in *Ortega* that retaliatory discharge is a tort committed only when the employer discharges the employee for an improper reason.

The federal courts in this district have had no difficulty reading *Coleman* in so far as it generally prohibits an employer from terminating an employee for absences caused by work-related injuries. Beyond that, the federal district courts have largely avoided any strict applications of *Coleman.* In *Huffman v. Ace Elec. Co., Inc.,* 883 F.Supp. 1469, 1476 (D.Kan.1995), the district court found that termination for failure to apply for a medical leave of absence and to further apply for extension of that leave was "directly contrary to the principles enunciated in *Coleman* . . . , since plaintiff was known to be off work for a claimed work-related disability." The employer's reliance on this ground to terminate the plaintiff "was contrary to public policy . . . [and] evidence of defendant's unlawful intent." *Id.* In *Rosas v. IBP, Inc.,* 869 F.Supp. 912 (D.Kan.1994), the court granted summary judgment for the employer who had terminated the plaintiff after fourteen months on leave of absence for her work-related injuries. The district court first found that the plaintiff's evidence was insufficient to show a retaliatory intent or a causal nexus between her filing of a workers compensation claim and her termination. 869 F.Supp. at 916–17. Alternatively, the court found that the plaintiff could not state a cognizable claim as she was still not capable of returning to her regular duties after over a year on leave. 869 F.Supp. at 917–18. Finally, in *Gaddy v. Dixon Tom-A-Toe Cos.,* No. 90–2072–V, 1991 WL 12822, at \*2–3, 1991 U.S.Dist. LEXIS 1266, at \*6–\*7 (D.Kan. Jan. 24, 1991), the district court granted summary judgment for the employer who had discharged the injured employee for being absent two consecutive days without notice. The district court held:

It is also undisputed that defendant could not terminate plaintiff for absences, whether notified or not, if the absences resulted from his work-related injury. *Coleman v. Safeway Stores, Inc.,* 242 Kan. at 816, 752 P.2d 645. The central issue of this dispute is whether, at the time that it discharged plaintiff, defendant knew or had reason to know that plaintiff's absences resulted from his work-related injury. We conclude that it did not.

In his opposition to defendant's motion, plaintiff's primary contention is that defendant should have known that his absence was due to his injury because defendant was aware that he had been referred to a

surgeon. However, we conclude that this fact, absent anything else, does not show that defendant knew or should have known that plaintiff's absence was injury-related. The uncontroverted facts disclose that on both June 6 and June 13, 1989, Dr. Gaba had released plaintiff immediately and without restriction to return to work. Defendant was notified by Dr. Gaba that plaintiff was suffering from a hernia and that he was fully released to return to work. The uncontroverted facts also show that plaintiff, without notifying his employers, failed to return to work for more than two months. During that period he never informed his employer that his absence was due to his work-related injury. In light of these facts, there is simply nothing in the record that would suggest that, as of June 15, 1989, the day on which plaintiff was terminated, plaintiff was terminated for any reason other than failing to report to work for two consecutive days. Both *Coleman* and *Pilcher* are factually inapposite to the present case.

1991 WL 12822, at *2–*3, 1991 U.S.Dist. LEXIS 1266 at *6–*7. *Huffman* and *Gaddy* require proof that the employer knew the absences were due to work-related injuries. *Rosas* explicitly requires proof of a causal nexus or retaliatory intent, *Gaddy* appears to require the same.

Courts from other jurisdictions have read *Coleman* as standing for the minority view that public policy is violated by a discharge pursuant to a non-retaliatory application of a facially neutral absenteeism policy:

> [C]ourts in numerous other jurisdictions have concluded that the discharge of a worker who has filed a claim for worker's compensation is permissible if the discharge is the result of the nondiscriminatory application of a facially neutral absenteeism policy. (ten citations omitted).

A few jurisdictions prohibit the discharge, even pursuant to a neutral absenteeism policy, of an employee who has pursued a worker's compensation claim. (three citations, including *Coleman,* omitted). We decline to follow these cases, as they rely on the *effect* of the policy on workers and reject the rule of *Kelsay [v.*

*Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978) ] that the employee seeking to recover for retaliatory discharge must prove retaliatory *intent* on the part of the employer.

*Hess v. Clarcor, Inc.,* 237 Ill.App.3d 434, 177 Ill.Dec. 888, 900, 603 N.E.2d 1262, 1274 (Ill. App. 2 Dist.1992); *see Swearingen v. Owens– Corning Fiberglas Corp.,* 968 F.2d 559, 563 n. 3 (5th Cir.1992); *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 557–58 (Tenn. 1993); *Wilmot v. Kaiser Aluminum & Chemical Corp.,* 118 Wash.2d 46, 821 P.2d 18, 31–32 (Wash.1991). The majority view rejects any per se rule that a discharge for absences caused by work-related injuries violates public policy. *Id.* The rationale to a retaliatory discharge tort action is that an employer's actions pursuant to a wrongful motive violate public policy and that without a wrongful motive there is no public policy violated or tort committed. *Id.*

■ The court admits the actual language found in *Coleman* readily submits to an interpretation that an employer, regardless of knowledge or intent, may not discharge an employee for absences caused by job-related injuries. To accept unconditionally this interpretation would contradict the *raison d'etre* for this tort. From *Murphy* to *Coleman* to most recently in *Ortega,* the Kansas appellate courts have stressed that this tort exception to the employment-at-will doctrine was developed to address employers' improper motives for firing employees in violation of public policy. The mere act of firing an injured employee for excessive absences or for a violation of a absenteeism policy does not implicate an improper retaliatory motive, particularly when the employer does not even know that one or more of the absences were due to work-related injuries. Consistent with *Gaddy* and *Mitchell,* the court holds that the plaintiff may not recover for retaliatory discharge unless she proves that at the time of her discharge the defendant knew or should have known the absences for which the plaintiff was being fired were the result of her work-related injury.

■ This leaves the question whether the plaintiff must prove a retaliatory intent or causal nexus and, if so, what must be proved.

Again, the court simply does not believe the Kansas Supreme Court intended in *Coleman* to ignore the very essence of the retaliatory discharge exception and create a tort based only an employer's non-retaliatory application of an absenteeism policy. Though recognizing that an employer can have an unlawful retaliatory motive for discharging an employee even before the employee's claim for workers' compensation benefits is actually filed, the court in *Coleman* did not articulate any plain statement of that motive. The language used in *Coleman* retains some of its force if read to mean that an employer violates public policy when it discharges an employee in retaliation for absences caused by work-related injuries. According to *Pilcher,* such retaliation is based upon the possibility of a workers' compensation claim being filed. 14 Kan.App.2d at 215, 787 P.2d 1204. Consequently, the court holds that the plaintiff may not recover for retaliatory discharge unless she proves that the defendant discharged her because of absences caused by work-related injuries for which she might file a claim for workers' compensation.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (Dk. 34) is denied.

Dated this 6th day of November, 1995, Topeka, Kansas.