**Jimmie Leuellen BASH, Plaintiff,**

v.

**CITY OF GALENA, KANSAS, Defendant.**

**No. 98–2072–KHV.**

United States District Court, D. Kansas.

Feb. 17, 1999.

---

1174

Jimmie Leuellen Bash, Galena, KS, plaintiff pro se.

James S. Pigg, David R. Cooper, Fisher, Patterson, Sayler & Smith, Topeka, KS, for City of Galena, Kansas, defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Jimmie Leuellen Bash brings this pro se action against his former employer, the City of Galena, Kansas, claiming discrimination and retaliatory discharge in violation of federal and state law. Plaintiff claims violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Kansas Age Discrim-

ination In Employment Act ("KADEA"), K.S.A. § 44–1111 *et seq.;* denial of his rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution; illegal discharge in retaliation for whistleblowing activities; and breach of an implied contract of employment.[1] This matter comes before the Court on defendant's *Motion For Summary Judgment* (Doc. # 25) filed December 21, 1998. In that motion, defendant argues that as a matter of law (1) defendant did not deny plaintiff procedural due process or equal protection of the laws; (2) plaintiff fails to state a claim under the ADEA; (3) plaintiff has failed to comply with state law notice requirements, thus depriving the Court of subject matter jurisdiction over plaintiff's state law claim for retaliatory discharge for whistleblowing; (5) plaintiff fails to establish a prima facie case of retaliatory discharge for whistleblowing; and (6) plaintiff fails to state a claim for breach of an employment contract. For reasons stated more fully below, defendant's motion must be sustained.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* at 251–52, 106 S.Ct. 2505.

---

1. Plaintiff also purports to state a claim under 42 U.S.C. § 1981. *See Pretrial Order* (Doc. # 24) filed December 10, 1998 at 4a. Because plaintiff claims intentional discrimination solely on the basis of age, and not race, color, or ethnicity, he does not state a claim

under Section 1981. *E.g., Des Vergnes v. Seekonk Water Dist.,* 601 F.2d 9, 13 (1st Cir. 1979) (Section 1981 addresses racial discrimination, not economic class discrimination or civil rights violations with no racial aspect).

## Factual Background

The following facts are uncontroverted or, where controverted, viewed in the light most favorable to plaintiff.

In 1972, Jimmie Leuellen Bash became a reserve police officer for the Police Auxiliary of the City of Galena, Kansas ("the City"), volunteering at least 16 hours per month. Reserve police officers are not paid. City of Galena Ordinance 94–10 § 1 provides:

> The officers of the Galena Auxiliary Police shall serve strictly as volunteers without pay, and said officers shall not be compensated in any manner at any time for their duties as auxiliary police officers.

On October 15, 1996, plaintiff became a full-time employee when Mayor Dale Oglesby appointed him a full-time police officer. The City did not represent that plaintiff could have the job for any given period of time, however, nor did it promise him employment for a specified term.

Prior to plaintiff's employment, in June 1988, the City of Galena had enacted Charter Ordinance No. 5. That ordinance, which remained in effect throughout plaintiff's employment, requires city employees to reside in the City of Galena and specifically provides in pertinent part as follows:

> Section 3. That the mayor shall appoint, by and with the consent of the council, the city clerk, chief of police, city superintendent, municipal judge, city attorney, court clerk, building inspector, and fire truck driver, and that the aforesaid appointees shall hold their offices for an indeterminate term, only subject to removal for death, resignation, physical or mental disability, financial exigency, or just cause. Just cause shall include, but not be limited to, any of the following: incompetence, insubordination, neglect of duties, conviction of a felony or misdemeanor, or failure to maintain proper residence as hereinafter provided.
>
> Section 4. That no person shall be eligible to be appointed to any of the aforesaid offices or to any employment with the City of Galena unless he or she shall be or shall become within 90 days of the appointment, a bona fide resident of the City of Galena and the State of Kansas.
>
> Section 5. That the residency requirement of Section 4 above shall not apply to the city attorney, city engineer or any other position which requires special training and licensing by the state.
>
> Section 6. That the residency requirement of Section 4 above shall not apply to anyone employed by the city on the effective date of this Charter Ordinance No. 5.

In addition, Galena City Code 1988 § 1–310 provides:

> RESIDENCY. Any employee of the city who fails to become a resident of the city within 90 days of appointment and confirmation or ceases thereafter to maintain residency within the city shall become immediately terminated. This provision shall not apply to employees specifically exempted by the State of Kansas.

Plaintiff's residence is adjacent to, but not within, the Galena city limits. According to Mayor Oglesby, plaintiff's appointment was conditioned on compliance with the residency requirement and plaintiff could have satisfied that requirement by moving into the City or consenting to annexation of his residence. Plaintiff disputes that his appointment was conditional upon residency. *Attachments To Memorandum In Support Of Defendant's Motion For Summary Judgment* (Doc. # 27) filed December 21, 1998, ex. 1, p. 81 (plaintiff's deposition of November 20, 1998). Plaintiff also believes that he was exempt from the residency requirement by virtue of Section 6, in that he was "grandfathered" by virtue of his long tenure as a reserve police officer with the Police Auxiliary, and Section 5, because the position of police officer requires state certification and training.

At the request of Mayor Oglesby, Chief of Police Sloan Rowland asked plaintiff two or three times whether he was going to annex his property. Plaintiff answered that he was not. After more than 90 days

had elapsed from the date of plaintiff's appointment, Mayor Oglesby instructed Chief Rowland to terminate plaintiff's employment for non-compliance with the residency requirement. Plaintiff's last day of work was January 22, 1997. On February 6, 1997, plaintiff received notice that he had been discharged for refusing to become a city resident. On that date he also received a copy of Charter Ordinance No. 5. The City did not discharge another police officer, Paul Duncan, who was not a city resident. Duncan had been hired as a full-time police officer, however, before the City adopted Charter Ordinance No. 5. Plaintiff does not know of any City employee who was fired for failing to comply with the residency requirement, nor does he know of any City employee who received a hearing where that employee was terminated within the first 90 days of employment.

Upon his review of Charter Ordinance No. 5, plaintiff formed the belief that he was exempt from the residency requirement because state law requires certification and training of full-time law enforcement officers. Mayor Oglesby, however, disagreed. Plaintiff asked the City Council to overturn his discharge and submitted a written position statement which explained his analysis why the residency requirement did not apply to him.

Plaintiff did not hold certification as a law enforcement officer at the time he was discharged, and he could have worked at least one year without having acquired the state-mandated training and certification.

Plaintiff believes that he was discharged on account of his age and in retaliation for concerns he raised regarding a "Troops to COPS" grant application to pay for training for military veterans newly hired as police officers.

When the City appointed Chief Rowland as Chief of Police, Mayor Oglesby instructed him to review all files and grant applications in the police department. On plaintiff's third day of employment, Chief Rowland asked plaintiff to review the grant application materials. Plaintiff found errors in the grant application which in his opinion revealed illegal conduct, and he suggested that Chief Rowland pursue the matter. *Attachments To Memorandum In Support Of Defendant's Motion For Summary Judgment* (Doc. # 27) filed December 21, 1998, ex. 11, p. 16. Chief Rowland subsequently informed Mayor Oglesby of suspected improprieties and Mayor Oglesby instructed Chief Rowland to notify the United States Department of Justice.

Galena's former Chief of Police, Gerald Hentz, had prepared and signed the grant application and supporting documentation. Mayor Oglesby had signed the grant application as the chief executive officer of the City, but had not reviewed the materials before signing them and did not know of any improprieties until Chief Rowland brought them to his attention.[2] Hentz ul-

---

**2.** Plaintiff purports to dispute this fact as follows: "Disputed. Chief Rowland stated he listened to audiotape where city council tabled action in regard to applying for grant because it sounded not lawful. Mayor Oglesby was presiding Mayor during time period." Plaintiff cites no record evidence, as required by D. Kan. Rule 56.1, and he therefore does not raise a genuine issue of material fact whether Mayor Oglesby knew of any improprieties. *E.g., Thompson v. City of Lawrence,* Nos. Civ.A. 93–2253–KHV, 93–2310–KHV, 1994 WL 262598, at *2 (D.Kan. May 19, 1994) (plaintiffs who purported to dispute moving party's statements of undisputed facts, but failed to cite record support, failed to establish genuine issue of material fact under local rule), *aff'd,* 58 F.3d 1511 (10th

Cir.1995). Indeed, with one exception, plaintiff fails to indicate what particular portions of the record—i.e., lines, paragraphs, page numbers or specific documents—establish disputed issues of fact. Therefore he does not properly controvert defendant's statement of facts. *See* D.Kan.Rule 56.1.

The Court is aware that plaintiff proceeds pro se and it shares the concern, frequently voiced by other courts, that pro se litigants not succumb to summary judgment merely because they fail to comply with the technical requirements involved in defending such a motion. *See Woods v. Roberts,* 47 F.3d 1178 (10th Cir.1995) (Table; text available on Westlaw at 1995 WL 65457, at *2) (10th Cir. 1995); *Hass v. United States Air Force,* 848 F.Supp. 926, 929 (D.Kan.1994). The Court

timately pled guilty to a misdemeanor in federal court for falsifying information to support the grant application.

Plaintiff believes that Mayor Oglesby's "attitude toward [plaintiff] was distance whereas it became knowledge [that plaintiff] was the person who first announced the possible act of felony." *Attachments To Memorandum In Support Of Defendant's Motion For Summary Judgment* (Doc. # 27) filed December 21, 1998, ex. 11, p. 18. It is undisputed, however, that Mayor Oglesby had no knowledge of plaintiff's role in uncovering the improprieties in the "Troops to COPS" grant application, and the Mayor was never charged with a crime in connection with the grant application.

Prior to this litigation, plaintiff did not give the City notice of any claim that he had been discharged for his involvement in identifying the problems with the "Troops to COPS" grant application.

Galena City Code 1998 § 1–309 provides in relevant part as follows:

HIRING OF EMPLOYEES. (a) Definitions.

(1) All city workers shall be designated as either officers or employees for the purposes of this section as follows:

(A) Officers shall include all elected positions of the city and the following appointed positions: city attorney, city superintendent, city clerk, municipal judge, chief of police and building inspector.

(B) Employees shall include all regular workers paid by the city, whether full-time or part-time, except those designated above as officers.

\* \* \* \* \* \*

(c) Appointments.

(1) All officers and employees shall begin their duties only upon appointment by the mayor and confirmation by the

council, except as provided in subsection (d) of this section.

\* \* \* \* \* \*

(d) Temporary Appointments.

### Analysis

### I. Procedural Due Process and Equal Protection

Plaintiff claims that the City of Galena denied his rights under the Due Process Clause of the Fourteenth Amendment because it did not afford him a hearing prior to discharge, and because he was exempt from the City's residency requirement. Plaintiff also claims that the City denied his rights under the Equal Protection Clause of the Fourteenth Amendment, on the ground that two other employees who were discharged received a grievance procedure, council review and a termination hearing, and the City "has always processed terminations through city council for final decision until [plaintiff's] case."

### A. Due Process

 Procedural due process must accompany the deprivation of an established property or liberty interest. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property interests are not created by the Constitution, however; rather, they "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law" *id.* at 577, 92 S.Ct. 2701; *see also Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (liberty and property interests attain constitutional status by virtue of fact that they have been initially recognized and protected by state law). The City argues that plaintiff did not have a property interest in continued employment and therefore was not entitled to a hearing prior to discharge.

has therefore diligently searched plaintiff's brief and the summary judgment exhibits to determine whether genuine issues of material

fact preclude summary disposition of plaintiff's claims.

■ For public employees, the threshold issue is whether the employee has "a legitimate claim of entitlement" in continued employment, as opposed to a "unilateral expectation" or "an abstract need or desire" for it. *Roth,* 408 U.S. at 577, 92 S.Ct. 2701; *Farthing v. City of Shawnee, Kansas,* 39 F.3d 1131, 1135 (10th Cir.1994). In *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), a city manager dismissed a police officer without a hearing to determine the sufficiency of the cause for discharge. The Supreme Court held that the police officer lacked a property interest in his position because he had no employment contract for a term of employment and no applicable statute created a property interest in continued employment. The Court noted that "[a] property interest in employment can, of course, be created by ordinance, or by an implied contract," but that in either case "the sufficiency of the claim of entitlement must be decided by reference to state law." *Id.* at 344, 96 S.Ct. 2074.

■ "Generally under Kansas case law, a public employee hired for a definite term has a property interest in continued employment, while an employee hired for [an] indefinite term is an 'at-will employee' without a property interest." *Elam v. Williams,* 753 F.Supp. 1530, 1536 (D.Kan.), *aff'd* 953 F.2d 1391, 1992 WL 21311 (1992) (citations omitted). *See also Kastner v. Blue Cross & Blue Shield, Inc.,* 21 Kan. App.2d 16, 22, 894 P.2d 909, 915 (1995) (in absence of contract to the contrary, employment is at-will). In Kansas, the well-established law regarding a public employee's property right in continued employment is that "the tenure of any office not provided for in the constitution may be declared by statute, and when not so declared such office shall be held at the pleasure of the appointing authority. 'Kansas law clearly establishes the incumbent to a public office enjoys no property or vested interest in public office.'" *Riddle v. City of Ottawa,* 12 Kan.App.2d 714, 716–17, 754 P.2d 465, 468–69 (1988) (citing *Stoldt v. City of Toronto,* 234 Kan. 957, 964, 678 P.2d 153, 160 (1984)). *See also*

Kansas Constitution Article 15 § 2. A legitimate claim of entitlement may be grounded in various sources of state law, including "state statutes, local ordinances, established rules, or mutually explicit understandings." *Dickeson v. Quarberg,* 844 F.2d 1435, 1437 (10th Cir.1988) (citations omitted).

■ Under the Code of the City of Galena ("city code"), 1988 Code § 1–309(c), the Mayor is the appointing authority. The city code creates a category of city officers who hold their appointments for an indefinite term and are subject to removal only for death, resignation, disability, financial exigency, or just cause. 1988 Code §§ 1–301, 1–309(a)(1)(B). Under the code, police officers are not city officers; they are "employees," which the code defines as "all regular workers paid by the city, whether full-time or part-time, except those designated above as officers." 1988 Code § 1–309(a)(1)(B). The code does not establish a term of appointment for employees.

In light of these ordinances, it is clear that police officer positions are for indefinite terms, subject to the pleasure of the Mayor as appointing authority. *E.g., Stoldt,* 234 Kan. at 957, 678 P.2d at 160. Plaintiff therefore was an at-will employee who lacked a property interest in continued employment. *E.g., Elam,* 753 F.Supp. at 1536.

■ Noting that an implied-in-fact contract of employment is an exception to the employment-at-will doctrine, the City argues that the uncontroverted facts establish the absence of an implied contract in this case. An implied-in-fact contract of employment arises from facts and circumstances showing mutual intent to contract. *Kastner,* 21 Kan.App.2d at 23, 894 P.2d at 915 (citing *Allegri v. Providence–St. Margaret Health Center,* 9 Kan.App.2d 659, 663, 684 P.2d 1031, 1035 (1984)). The established rule in Kansas is that intent of the contracting parties is normally a question of fact for the jury, and determination

of whether there is an implied contract in employment requires a factual inquiry. *Frye v. IBP, Inc.*, 15 F.Supp.2d 1032, 1044 (1998). Factors to be considered when determining if the parties had a mutual intent to contract include

> the understanding and intent of the parties, which are ascertainable from written and oral negotiations, the conduct of the parties, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to make clear the intention of the parties at the time the employment relationship commenced.

*Id.* at 1044–45 (citations omitted).

 Plaintiff concedes that he had no contract for employment of a specific duration but argues that "[t]he facts have always established an implied contract." Specifically, he argues that

> Galena has always used the standard of just cause for termination of any employee. The City of Galena has always processed terminations through city council for final decision until Bash case. This city's practice creates a legitimate claim of entitlement because of established rules, or mutually explicit understanding per Dickeson v. Quarberg, 844 F.2d 1435, 1437 (10th Cir.1988).

In support of this argument, plaintiff cites unsupported factual allegations regarding former employees who were also dis-

charged. Specifically, he alleges that Aloma Williams received "council review and settlement," Angie Roberts received "process; grievance procedure, panel meetings, and termination hearing," and "all other employees discharged were allowed similar treatment if requested." Plaintiff's *Memorandum In Opposition To Defendant's Motion For Summary Judgment* (Doc. 29) filed January 8, 1999, at 7. Plaintiff cites no record evidence in support of these allegations and the Court can find none.[4] Accordingly, plaintiff fails to establish a genuine issue of material fact whether he had an implied-in-fact contract of employment which was sufficient to create a protected property interest in continued employment.[5]

Both parties offer further argument regarding the applicability to plaintiff of the City's residency requirement. Plaintiff argues that he was exempt from the residency requirement either because he was "grandfathered" by virtue of his long tenure as a reserve police officer or, alternatively, because police officers require state certification and training. Plaintiff contends that the City could not terminate his employment under the residency provision and that he therefore had an expectation of continued employment. The City disputes plaintiff's arguments, and contends that it properly discharged him for failure to comply with the residency requirement.

The residency requirement has no bearing on the question whether plaintiff had a

---

4. The record contains a copy of plaintiff's EEOC complaint, in which plaintiff set forth the following assertions:

> During past five years Mayor Oglesby presided over many police discharges. All had due process. Some simply resigned. [A]ll other process's [sic] were by policy with city council making decisions by majority vote. City records will or should prove this. By memory some discharged employees were ... police dispatchers Angie and Aloma—last names not Known [sic]. During due process some agreed to quit, some went to court, some allowed to continue working and some are adjusted [sic].

Plaintiff's *Complaint* (Doc. # 1) filed February 20, 1998 (ex. attached thereto: EEOC Charge

of Discrimination dated June 28, 1997). The record does not reveal the basis for plaintiff's allegations. His contention that "City records will or should prove" the City's practice of affording discharged employees due process, and that two police dispatchers received due process treatment, does not establish a genuine issue of material fact whether he had an implied-in-fact contract of employment with the City sufficient to create an expectation of continued employment.

5. Our determination of this issue renders moot any independent claim plaintiff may assert for breach of an employment contract.

protected property interest. Galena Charter Ordinance No. 5 § 4 provides that "no person shall be eligible to be appointed to any ... office[ ] or to any employment with the City of Galena unless he or she shall be or shall become within 90 days of the appointment, a bona fide resident of the City...." Galena City Code 1988 § 1–310 provides that any city employee "who fails to become a resident of the city within 90 days of appointment and confirmation or ceases thereafter to maintain residency within the city *shall become immediately terminated.*" (emphasis added). As a matter of law, such provisions do not create any expectation of continued employment. To the contrary, they merely establish a condition for continued employment.

Even if plaintiff were exempt from the residency requirement, that fact would not alter the at-will nature of his employment. His position was not among the specific positions listed in the city code which are subject to removal only for death, resignation, disability, financial exigency, or just cause; it had an indefinite term, subject to the pleasure of the Mayor as appointing authority. The Court rejects plaintiff's argument that his exemption from the residency requirement created an expectation of continued employment, thereby transforming his at-will employment into a protected property interest.

In conclusion, plaintiff did not have a constitutionally protected property right in his job as police officer. He cannot point to any state statute, city code, or contract which addresses the duration of his employment or the criteria for his termination, thus giving rise to a legitimate claim of entitlement in continued employment. Therefore he was not entitled to procedural due process prior to discharge.

## B. Equal Protection

 Plaintiff claims that the City denied his rights under the Equal Protection Clause of the Fourteenth Amendment because it treated him differently than other city employees. Specifically, plaintiff claims that the City discharged him for failure to comply with the residency requirement, but did not fire Duncan in similar circumstances. As noted above, plaintiff also claims that he did not receive a termination hearing, whereas other discharged city employees received such hearings. In response, the City argues that plaintiff fails to demonstrate that he received different treatment than a similarly situated class of persons. *E.g., Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir.1996) ("[t]he Equal Protection Clause requires that no state deny any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV. An equal protection violation occurs when the government treats someone differently than another who is similarly situated.") (citation omitted).

The fact that the City discharged plaintiff, but not Duncan, does not establish a violation of plaintiff's equal protection rights. Section 6 of Charter Ordinance No. 5 provides that the residency requirement of Section 4 does not apply to anyone "employed" on the effective date of the ordinance. On the effective date of Charter Ordinance No. 5, Duncan was employed as a full time salaried police officer, whereas plaintiff was a reserve police officer with the Police Auxiliary. The reserve police officer position was not a paid position. Galena City Code 1988 § 1–309(a)(1)(B) provides that employees shall include all regular workers "paid" by the city. Although Duncan was exempt from the residency provisions on the effective date of Charter Ordinance No. 5, plaintiff was not. Therefore Duncan was not within the class of similarly situated persons.

Without citation to the record, plaintiff argues that

> The reserves did receive pay for requested service and pay for court duty. City ordinance provided for payment. Reserves were considered employees of the city, at one period health insurance was provided.

Plaintiff's *Memorandum In Opposition To Defendant's Motion For Summary Judgment* (Doc. # 29) filed January 8, 1999 at

8. He further argues that "[n]ow a reserve is not considered an employee by establishment of a 1988 law," but that he was an employee prior to the law. *Id.* Accordingly, plaintiff contends that the City "employed" him when he became a reserve officer in 1972 and therefore he, like Duncan, was exempt from the residency requirement.

Plaintiff's argument is meritless. He cites no City ordinance, and the Court finds no evidence in the record, to establish that the volunteer position of auxiliary police officer was covered by the phrase "employed by the city" under Section 6 of Charter Ordinance No. 5. Even if his tenure as a volunteer reserve officer made him an employee for purposes of that exemption, a City ordinance which was in effect prior to his appointment as a police officer in 1996 made it clear that reserve police officers were volunteers rather than paid employees. *See* Galena City Ordinance 94–10 § 1 ("[t]he officers of the Galena Auxiliary Police shall serve strictly as volunteers without pay [and] shall not be compensated in any manner at any time for their duties as auxiliary police officers.").[6]

 Plaintiff also fails to establish a genuine issue of material fact whether the City treated similarly situated employees differently than him. As noted above, he cites no evidence in the record, and the Court finds none, to support his allegations that Aloma Williams received "council review and settlement," that Angie Roberts received "process; grievance procedure, panel meetings, and termination hearing," or that "all other employees discharged were allowed similar treatment if requested." Additionally, he concedes that none of the employees who allegedly received · termination hearings were discharged in circumstances similar to him, i.e., for noncompliance with the residency require-

ments. Accordingly, even if those employees received different treatment, they are not similarly situated and the treatment which they received does not establish a denial of plaintiff's equal protection rights.

The City further argues that even if plaintiff could demonstrate different treatment of similarly situated persons, his equal protection claim would fail because plaintiff does not belong to a suspect class, this case involves no fundamental right, and the City therefore needed only a reasonable basis for terminating plaintiff's employment. *See, e.g., Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.,* 927 F.2d 1111, 1119 (10th Cir.1991) (constitutional challenges not involving suspect classes or fundamental rights subject to rational basis review); *Gregory v. Ashcroft,* 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (age not suspect class entitled to heightened level of equal protection scrutiny); *see also United Bldg. & Constr. Trades Council v. Mayor of Camden,* 465 U.S. 208, 219, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984) (no fundamental right to government employment for purposes of Equal Protection Clause). The Court agrees that the City's decision is subject only to rational basis review. Because of our finding that plaintiff was not exempt from the City's residency requirement, the Court finds—for reasons stated below—that the City had a reasonable basis for terminating plaintiff's employment. Consequently defendant is entitled to summary judgment on plaintiff's equal protection claim.

## II. Plaintiff's Claims Under The ADEA And KADEA

 The ADEA bans discrimination against employees based on age, but limits the protected class to workers who are 40 or more years old. *Greene v. Safe-*

---

6. Alternatively, plaintiff argues that he was exempt by the terms of Charter Ordinance No. 5 § 5, which provides that the residency requirement "shall not apply to the city attorney, city engineer or any other position which requires special training and licensing by the

state." Even if plaintiff did fall within this exemption, his termination does not constitute a denial of equal protection vis à vis Duncan, who was exempt under Section 6. In any event, we analyze the training and licensing exemption separately in part II, *infra.*

*way Stores, Inc.*, 98 F.3d 554, 557 (10th Cir.1996); 29 U.S.C. § 621 *et seq.* The KADEA also bans discrimination against employees based on age, but limits protection to those who are 18 or more years old. K.S.A. § 44–1112(a). To prevail on an ADEA claim, plaintiff must establish that age was a determining factor in the employer's challenged decision. *Greene*, 98 F.3d at 557; accord *Elza v. Koch Indus., Inc.*, 16 F.Supp.2d 1334, 1339 (D.Kan. 1998). Plaintiff need not show age was the sole reason for his termination, but he must show that age "made the difference" in the City's decision. *Greene*, 98 F.3d at 557. He may meet this burden by direct or circumstantial evidence that age was a determining factor in his discharge. *Id.*

■ Plaintiff relies on the proof scheme for a prima facie case established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Greene*, 98 F.3d at 557–60; *Kansas State Univ. v. Kansas Comm'n On Civil Rights*, 14 Kan.App.2d 428, 438, 796 P.2d 1046, 1053 (1990). To establish a prima facie case under either the ADEA or the KADEA,[7] plaintiff must show that (1) he was within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) a younger person replaced him or he received less favorable treatment than younger employees. *Smith v. Midland Brake, Inc.*, 138 F.3d 1304, 1312 (10th Cir.1998). Plaintiff's establishment of a prima facie case creates a presumption of discrimination. The burden then shifts to the City to produce evidence that the adverse employment action was taken for a legitimate nondiscrim-inatory reason. *Greene*, 98 F.3d at 558. If the City meets this burden, the presumption drops from the case and plaintiff must present evidence that the proffered reason was not the true reason for the employment decision. *Id.*

■ The City argues that plaintiff fails to establish the second element of a prima facie case because he did not comply with the residency requirement. In determining whether plaintiff has made a prima facie case that he was performing satisfactory work, the Court must disregard the employer's proffered reasons for terminating him. *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir.1992) (citing *MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1119–20 (10th Cir.1991)).[8] Because the City does not contest plaintiff's ability to establish any of the other elements of his prima facie case, the Court presumes that plaintiff can state a prima facie case.

■ In the alternative, the City argues that plaintiff's failure to comply with the residency requirement constitutes a legitimate nondiscriminatory reason for terminating his employment. It argues that the Mayor was obligated to discharge plaintiff by virtue of Galena City Code 1988 § 1–310, which provides that "[a]ny employee of the city who fails to become a resident of the city within 90 days of appointment and confirmation or ceases thereafter to maintain residency within the city shall become immediately terminated." Plaintiff argues that the City could not fire him for noncompliance with the residency requirement because he was exempt from that requirement, both by virtue of the "grandfather" clause and the exemption for positions which require special training

---

7. The Kansas Supreme Court has adopted the *McDonnell Douglas* burden shifting test for claims brought under the KADEA. *See Beech Aircraft Corp. v. Kansas Human Rights Comm'n*, 254 Kan. 270, 274, 864 P.2d 1148, 1152 (1993); *Elza*, 16 F.Supp.2d at 1340.

8. Further, plaintiff's noncompliance with the residency requirement is not relevant to the question whether he was performing satisfactory work. *See, e.g., Kirkland v. Safeway Inc.*, 153 F.3d 727 (Table; text available in Westlaw at 1998 WL 439662, at *3) (10th Cir. 1998) (under *McDonnell Douglas* plaintiff must make prima facie showing that he was "performing satisfactorily under the criteria in place at the time Defendant terminated him").

and state licensing. The Court has previously addressed plaintiff's argument that he was exempt under the "grandfather" clause, finding it to be without merit as a matter of law.

Charter Ordinance No. 5 § 5 provides that the residency requirement "shall not apply to the city attorney, city engineer or any other position which requires special training and licensing by the state." Plaintiff argues that the position of police officer requires special training and licensing by virtue of state law, K.S.A. § 74–5607a, which provides in pertinent part:

> (a) No person shall receive a permanent appointment as a full-time police officer or law enforcement officer, unless such officer has been awarded a certificate attesting to satisfactory completion of a course of not less than 320 hours of accredited instruction at the training center or at a certified state or local law enforcement training school or has been awarded such a certificate for not less than the number of hours of instruction required by the Kansas law enforcement training act at the time such certificate was issued or received a permanent appointment as a full-time police officer or law enforcement officer. . . .

> \* \* \* \* \* \*

> (c) Subject to the provisions of subsection (d):

> (1) Any person who is appointed . . . as a police officer or law enforcement officer and who does not hold a certificate as required by subsection (a) may be elected or appointed as an officer on a provisional basis for a period of not more than one year. Any person appointed as a police officer or law enforcement officer on a provisional basis who does not receive the certificate required under subsection (a) within one year following the date of the person's original election or appointment shall

forfeit such office or position at the end of such one-year period. . . .

> \* \* \* \* \* \*

> (d) The director may extend the one-year time period for the 320 hour basic-reciprocity school . . . and may extend, waive or modify the annual continuing education requirement, when it is shown that the failure to comply with the requirements of subsection (a) or (b) was not due to the intentional avoidance of the law.

This statute governs the training of police officers in Kansas, but omits any reference to "licensing." Rather, it simply requires a "certificate" which attests to satisfactory completion of law enforcement training. Had the state legislature intended to create a licensing procedure for police officers in § 5607a, it would have used the word license, just as it has in other contexts. *See, e.g.,* K.S.A. § 75–7b02.[9] Because the state does not require "licensing" for police officers, plaintiff does not fall within the Charter Ordinance No. 5 § 5 exemption to the residency requirement.

■ At this point, the presumption of discrimination drops from the case and the burden shifts to plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 327 (10th Cir.), *cert. denied* 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996) (citing *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995)). Plaintiff argues that an audiotape recording of a council meeting held June 6, 1995, "clearly set the pattern, which led to Plaintiff's termination." The audiotape contains a discussion by council members regarding the "Troops to COPS" grant program. According to plaintiff, the

9. K.S.A. § 75–7b02 provides that "(a) It shall be unlawful for any person to engage in detective business in this state unless such person is *licensed* as a private detective under this act. (b) It shall be unlawful for any person to engage in business in this state as a private detective agency unless such person is *licensed* therefor. (c) No law enforcement officer . . . may be *licensed* as a private detective or private detective agency." (emphasis added).

audiotape reveals that the Council was "excited at the prospect of hiring police at such a greatly reduced cost." He argues that "[a]pplying for grants would be proper but to break the laws certainly would not."

Without citation to any evidence in the record, plaintiff then argues that (1) the City replaced him with a person half his age; (2) when he was hired the average age of police officers was 36.5 years, as compared to an average age of 26.4 years in 1998; (3) "[o]n average the police patrolman have [sic] less than 2 years app. [sic] seniority"; and (4) "[a]ll police Officers I have worked with have been replaced." During his deposition plaintiff was asked whether he believes that he was fired due to his age. Plaintiff testified:

> The possibility exists. I would not want to believe that. But the possibility exists. It would be something that I couldn't absolutely affirm if I answered it in the affirmative.

*Attachments To Memorandum In Support Of Defendant's Motion For Summary Judgment* (Doc. # 27) filed December 21, 1998, ex. 1, p. 77 (plaintiff's deposition of November 20, 1998).

Having reviewed the audiotape which plaintiff submitted as an exhibit to his brief, and having diligently searched the summary judgment record, the Court is unable to find any evidence which creates a genuine issue of material fact whether the City's proffered reason for termination was a mere pretext for age discrimination. Plaintiff's conclusory allegations are insufficient to carry his burden under *Marx*, 76 F.3d at 327. *See, e.g., Palucki v. Sears Roebuck and Co.*, 879 F.2d 1568, 1572 (7th Cir.1989) (plaintiff cannot ward off summary judgment with affidavit or deposition based on conjecture); *Phillips v. Calhoun*, 956 F.2d 949, 951 (10th Cir.1992) ("[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings."); *Metro Oil Co. v. Sun Refining & Mktg. Co.*, 936 F.2d 501, 504 (10th Cir. 1991); *Conaway*, 853 F.2d at 793 ("[i]n a response to a motion for summary judg-

ment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."). By his own deposition testimony plaintiff concedes that it is merely a "possibility" that age was the true reason for his discharge. Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claims under the ADEA and KADEA.

## III. Plaintiff's State Law Claim For Retaliatory Discharge

Plaintiff claims that the City discharged him because he raised concerns regarding the legality of the "Troops to COPS" grant application, apparently under a tort theory of retaliatory discharge for whistleblowing activities. *See, e.g., Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685, 689–90 (1988). The City argues that plaintiff failed to comply with the notice requirements of K.S.A. § 12–105b, which requires filing of written notice of a tort claim with the clerk or governing body of the City before commencing suit. Accordingly, the City argues that this Court lacks subject matter jurisdiction over plaintiff's state law retaliatory discharge claim. In the alternative, the City argues that it is entitled to judgment as a matter of law because plaintiff cannot establish a prima facie case of retaliatory discharge for whistleblowing.

### A. Notice And Subject Matter Jurisdiction

"Generally, the party seeking to invoke federal jurisdiction has the duty to establish that such jurisdiction is proper." *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F.Supp. 279, 281 (D.Kan.1995) (citing *Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)). Because federal courts are courts of limited jurisdiction, there is a presumption against federal jurisdiction. *Id.* A court lacking jurisdiction must dismiss the case at any stage of the proceeding in which it becomes apparent that jur-

isdiction is lacking. *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir.), *cert. denied,* 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995); Fed.R.Civ.P. 12(h)(3).

Under K.S.A. § 12–105b(d) any person having a tort claim against a municipality must file a written notice before commencing an action against the municipality. Such notice must be filed with the clerk or governing body of the municipality and contain the following:

> (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of, (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested.

*Id.* The notice requirements in K.S.A. § 12–105b(d) are mandatory and a condition precedent to bringing a tort claim against a municipality.[10] *See Tucking v. Board of Comm'rs,* 14 Kan.App.2d 442, 445, 796 P.2d 1055, 1057–58 (1990). *See also Martel v. City of Newton,* 6 F.Supp.2d 1243, 1248 (D.Kan.1998) (applying *Tucking*). In the filing of a notice of claim under Section 12–105b(d), "substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim." K.S.A. § 12–105b(d). There is only "substantial compliance if the plaintiff makes an attempt to state each element of the notice." *Wiggins v. Housing Auth.,* 19 Kan.App.2d 610, 613, 873 P.2d 1377, 1380 (1994) (citing *Tucking,* 14 Kan.App.2d at 446–47, 796 P.2d at 1058). Therefore, there is no substantial compliance if one element is completely missing. *Tucking,* 14 Kan.App.2d at 446, 796 P.2d at 1058.

▮▮ Plaintiff argues that the position statement which he submitted to the City

Council on February 18, 1997, constituted notice and that he therefore complied with the notice requirements of K.S.A. § 12–105b(d). As the City correctly points out, plaintiff's position statement addresses only his contention that the residency ordinance does not apply to him; it contains no reference to his claims of retaliatory discharge with respect to the Troops to COPS grant. *See Attachments To Memorandum In Support Of Defendant's Motion For Summary Judgment* (Doc. # 27) filed December 21, 1998, ex. 12 ("I Jimmie L. Bash protest Mayor Oglesby's termination of my employment because of failure to comply with resident requirement of Section # 4 Ordinance No. 5 (Charter)."). Plaintiff's position statement does not include his address, refers to no facts regarding his retaliatory discharge claim, and makes no statement of the amount of monetary damages being requested. The position statement therefore does not comply with requirements (1), (2), (4), and (5) of K.S.A. § 12–105b(d).

Plaintiff has failed to establish that he has fulfilled the condition precedent to filing suit against the City on a claim subject to the Kansas Tort Claims Act. Accordingly, plaintiff's claim against the City for retaliatory discharge for whistleblowing must be dismissed for lack of jurisdiction. *See, e.g., Scheideman,* 895 F.Supp. at 282.

### B. The Merits Of Plaintiff's Claim For Retaliatory Discharge

Even if plaintiff had complied with the notice requirements of K.S.A. § 12–105b(d), the Court finds that the City would nevertheless be entitled to judgment as a matter or law on plaintiff's claim for retaliatory discharge for whistleblowing for the reasons stated below.

Kansas courts apply the *McDonnell Douglas* burden-shifting approach when analyzing state law retaliatory discharge cases. *See, e.g., Ramirez v. IBP, Inc.,* 913 F.Supp. 1421, 1429 (D.Kan.1995); *Robinson v. Wilson Concrete Co.,* 913 F.Supp. 1476 (D.Kan.1996). Under this approach

---

**10.** A city is included within the definition of municipality. *See* K.S.A. § 12–105a(a).

plaintiff must first present proof of a prima facie case of retaliatory discharge. Proof of a prima facie case raises a rebuttable presumption of retaliatory intent. *Ramirez,* 913 F.Supp. at 1429. Once plaintiff establishes a prima facie case, it becomes the employer's burden to produce a legitimate, non-retaliatory reason for the discharge. *Id.*

■ The elements of a claim for retaliatory discharge for whistleblowing are as follows:

> To maintain such action, an employee has the burden of proving by clear and convincing evidence, under the facts of the case, a reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation for making the report.

*Palmer,* 242 Kan. at 900, 752 P.2d at 690.

■ The City argues that there is no evidence that Mayor Oglesby had knowledge of plaintiff's participation in identifying the problem with the "Troops to COPS" grant application, nor is there evidence of a causal connection between plaintiff's alleged conduct and his discharge. In response, plaintiff argues that proof of his prima facie case "most likely lays hidden with the lost case file, which was taken from Chief Rowland [sic] office the night of his discharge 09-1998. It truly isn't lost it is being secured by the reported person who cleaned out the office." [11]

Plaintiff points to no record evidence, and the Court can find none, which demonstrates a genuine issue of material fact whether the mayor had knowledge of plaintiff's protected activity or discharged him because of it. It is undisputed that Mayor Oglesby did not review the grant application or supporting documentation before signing it, and did not know of any improprieties with the grant application until Chief Rowland brought them to his attention.

Although the record reveals plaintiff's belief that Mayor Oglesby's "attitude toward [plaintiff] was distance whereas it became knowledge [that plaintiff] was the person who first announced the possible act of felony," *Attachments To Memorandum In Support Of Defendant's Motion For Summary Judgment* (Doc. # 27) filed December 21, 1998, ex. 11, p. 18, it is also undisputed that Mayor Oglesby had no knowledge of plaintiff's involvement, if any, in alerting him to the improprieties regarding the "Troops to COPS" grant application.[12] In the face of these undis-

---

**11.** In its reply brief, the City elucidates as follows:

> Plaintiff asserts that evidence of retaliatory motive would probably be in the Troops to COPS grant file. As disclosed to the Court during the Pretrial Conference, city employees cannot locate that file. The City acknowledges the file existed and was given to federal investigators when the City self-reported the improprieties regarding the grant application.
>
> Plaintiff contends, without evidentiary support, that the subject file was removed from the office of the former police chief Sloan Rowland by City Attorney Michael Goodrich. Again defendant admits that some files were removed by Mr. Goodrich upon Rowland's termination. Those files are in the custody of the undersigned counsel and contain no information whatever on the Troops to COPS grant.

Defendant's *Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* (Doc. # 30) filed January 22, 1999, at 10.

**12.** The only other evidence proving that the mayor had knowledge of plaintiff's participation in identifying the problem with the "Troops to COPS" grant application is plaintiff's deposition testimony:

> I think there was retaliation and revenge. I think that—I can't remember how I become [sic] informed that the mayor knew that I did that and made that review, but somewhere in the course of time there was talk, "The mayor's pretty mad at you for pointing out the fact on that grant," and I have not included that in the [written request to the council seeking review of my termination], because it's definitely hearsay, and I can't remember it, it's foggy.

puted facts, plaintiff must do more than speculate that a missing file "most likely" contains the evidence which will establish a causal connection between plaintiff's conduct and his discharge. Nothing in the record suggests that the file, if found, would include evidence that Mayor Oglesby knew of plaintiff's allegedly protected activity when he made the decision to terminate plaintiff's employment. As a result, plaintiff cannot establish a genuine issue of material fact whether the Mayor had knowledge of his protected activity prior to discharging him. The City therefore is entitled to judgment as a matter of law on plaintiff's state law claim for retaliatory discharge for whistleblowing.[13]

**IT IS THEREFORE ORDERED** that defendant's Motion For Summary Judgment (Doc. # 25) filed December 21, 1998, be and hereby is **SUSTAINED**.

To withstand summary judgment, plaintiff must present evidence that the City's proffered reason is unworthy of belief. *Randle,* 69 F.3d at 453. Such evidence must be sufficient to create a reasonable inference that the reason is pretext. *Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 897 (10th Cir.1994). Plaintiff's mere speculation that the Mayor had knowledge of his protected activity, without more, is insufficient to create a genuine issue of material fact.

13. Even if plaintiff could establish a prima facie case of retaliatory discharge, application of our analysis above regarding the exemption to the residency statute would compel a conclusion that the City had a legitimate, nonretaliatory reason for terminating his employment and he points to no evidence that that reason was a mere pretext. *See, e.g., Candelaria v. EG & G Energy Measurements, Inc.,* 33 F.3d 1259, 1261 (10th Cir.1994) (plaintiff's unsupported belief insufficient to support finding of retaliatory motive by employer).